**PODUNK REALTY, INC.**
v.
**The UNITED STATES.**
No. 410–64.

United States Court of Claims.
Dec. 15, 1967.

Albert H. Greene, Washington, D. C., attorney of record, for plaintiff.

Ray Goddard, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on March 15, 1967. Exceptions to the commissioner's findings and recommended conclusion of law were filed by plaintiff and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's findings, opinion, and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is, therefore, not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER *

WHITE, Commissioner:

In this case, the plaintiff sues for $55,960 because the defendant allegedly breached a lease agreement that was entered into on March 26, 1962 between the plaintiff's predecessor in interest, Green Manor Construction Company, Inc. (referred to hereafter in the opinion as "Green Manor") and the defendant.

It is my opinion that the plaintiff is not entitled to recover.

The lease agreement in question was numbered GS–02B–8978, and it was entered into between Green Manor as lessor and the defendant as lessee. In the lease agreement, Green Manor leased to the defendant "A two story and basement building containing approximately forty thousand (40,000) gross square feet of floor area to be constructed as hereinafter set forth on a plot located at 599 Delaware Avenue in Buffalo, New York * * *." As indicated in this quotation, there actually was no building on the lot at 599 Delaware Avenue when the lease was entered into, and it was part of the agreement that Green Manor as lessor would construct such a building and make it available for use and occupancy by the defendant as lessee. The lease was for a primary term of 10 years beginning on or about February 1, 1963 (whenever the building was ready for use and occupancy by the defendant), and the defendant was granted an option to renew the lease for two additional periods of 5 years each.

On its side, the defendant as lessee under lease No. GS–02B–8978 agreed to pay the lessor rental at the rate of $116,952 per annum during the primary 10-year term of the lease and at the rate of $114,700 per annum during any extension of the lease.

Green Manor (or the plaintiff as Green Manor's successor in interest on and after July 24, 1962) constructed on the site at 599 Delaware Avenue in Buffalo, New York, and made available to the defendant for its use and occupancy, a building which the defendant accepted as meeting the requirements specified in lease No. GS–02B–8978. The defendant, in turn, has apparently performed its obligation under the lease by paying the annual rental provided for in the lease. Thus, it appears on the surface that, as of the present time, both parties have met the respective obligations imposed upon them by the lease, and that there is

---

* The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

no basis for the assertion of a breach-of-contract claim against the defendant.

The evidence in the record indicates, however, that it cost the lessor more to construct the leased building than was anticipated at the time when lease No. GS–02B–8978 was entered into; and the problem before the court is to determine whether the defendant is somehow legally liable for the extra cost.

As previously indicated, lease No. GS–02B–8978 provided that the lessor would construct on the site at 599 Delaware Avenue, and would make available to the defendant for use and occupancy, a "two story and basement building containing approximately forty thousand (40,000) gross square feet of floor area * * *." The lease further provided that the building would "substantially" conform to certain schematic drawings which the defendant had previously furnished to the lessor and which indicated that the defendant desired for the use of the Food and Drug Administration a building which would contain approximately 40,000 square feet of floor area, divided among: (1) a basement floor, providing as the principal facilities a rather large garage and parking area, a supply room, a service room, a receiving and shipping room, refrigeration rooms, and rooms for the storage of inspectors' equipment, samples, and volatile solvents; (2) a first floor, providing as the principal facilities a large office for clerical personnel, a large office for inspectors, individual offices for the director, assistant director, and other officials, an interview room, a room for hearings and conferences, a women's locker room, a men's locker room, and rooms for clerical supplies and inspectors' supplies; (3) a second floor, providing as the principal facilities a library and a number of laboratories; and (4) a penthouse, providing space for stills and a storage tank.

In addition, the lease provided that the lessor would prepare "complete working construction drawings and specifications, which shall include, among other things a site plan showing the orientation of the building on the site and related ground improvements in conformity with Buffalo City ordinances based on the scope of the work as outlined in the * * * [schematic] drawings * * *"; that the lessor would submit two copies of the working construction drawings "to the Government for review and approval"; and that the lessor would "make such changes to said working construction drawings, recommended by the Government, without additional cost to the Government, provided such changes are within the scope of the work referred to in * * * [the schematic] drawings * * *."

On April 2, 1962, the lessor submitted to the defendant, for review in accordance with the provisions of the lease, four alternative sets of drawings, designated as schemes AA, AAA, B and BB, for the building to be constructed at the 599 Delaware Avenue site. All of these drawings were disapproved by the defendant on April 10, 1962.

Schemes AA, AAA, and BB were disapproved by the defendant because they indicated that where the building fronted on Delaware Avenue, the bottom or so-called basement floor (containing the garage and parking area, among other facilities) would be at approximately the same level as Delaware Avenue, the so-called first floor (containing the offices) would be the second story of the building from the ground level at Delaware Avenue, and the so-called second floor would be the third story from the ground level at Delaware Avenue. The defendant took the position that schemes AA, AAA, and BB would provide a 3-story building rather than a 2-story-and-basement building, as called for in the lease agreement. In this connection, it should be mentioned that the topography of the lot at 599 Delaware Avenue was such that the surface of the ground sloped upward in the direction away from Delaware Avenue, so that, under schemes AA, AAA, and BB, the bottom or basement story would have been below the ground level on the opposite side of the building from Delaware Avenue; and the building, when viewed from the rear,

would not have appeared to be a 3-story building.

Scheme B was disapproved by the defendant because, although this scheme called for the bottom or so-called basement floor to be at a depth of about 10 feet below the ground level on the Delaware Avenue side and for the so-called first floor (containing the offices) to be readily accessible from Delaware Avenue, it would be necessary for automobiles using the ramp from Delaware Avenue down to the entrance of the garage and parking area on the bottom or basement floor to make two very sharp turns in negotiating this distance.

Following the disapproval by the defendant of the lessor's drawings that comprised schemes AA, AAA, B, and BB, the lessor prepared another set of drawings for the proposed construction of the building at 599 Delaware Avenue. These drawings were designated as scheme A.

In order to meet the defendant's conception of a 2-story-and-basement building—i. e., a building where the so-called first floor, containing the offices, would be at approximately the same level as Delaware Avenue on that side of the building and thus readily accessible from Delaware Avenue—the lessor provided in scheme A for the placement of the bottom or so-called basement floor at a depth of about 12½ feet below the ground level on the Delaware Avenue side of the building. The ramp leading from Delaware Avenue down to the entrance of the garage and parking area on the bottom or basement floor was designed so as to avoid sharp turns.

The drawings that comprised the lessor's scheme A were submitted to and approved by the defendant; a building was constructed by the lessor at 599 Delaware Avenue in accordance with such drawings; and the building was accepted by the defendant, as lessee, for use and occupancy under lease No. GS–02B–8978.

The plaintiff contends—and the evidence in the record indicates—that the defendant's action in disapproving the lessor's schemes AA, AAA, B, and BB for the building at 599 Delaware Avenue increased the cost to the lessor of constructing the building.

The plaintiff concedes that the lessor was required under the lease agreement to submit working construction drawings to the defendant for review and approval, and was further required to make, without additional cost to the defendant, such changes in the working construction drawings as might be recommended by the defendant. However, the plaintiff points out that the defendant's authority to recommend changes was limited, in that such changes had to be "within the scope of the work" provided for in the lease, and that the lease provided for the construction by the lessor of a "two story and basement building" to be made available to the lessee. The plaintiff further points out that the lease agreement provided that the building would be oriented on the site at 599 Delaware Avenue "in conformity with Buffalo City ordinances"; and that the Buffalo building code during the period 1961–1962 defined "basement" as a story of a building which was more than 12 inches, but not more than one-half the height of the story, below the highest level of the adjoining street, and defined "cellar" as a story of a building which was more than one-half the height of the story below the highest level of the adjoining street. The plaintiff then proceeds to argue that when the defendant insisted that the so-called first floor of the building be placed at approximately the ground level on the Delaware Avenue side, thus requiring that the bottom or so-called basement story be more than one-half the height of the story below the level of the ground, this necessitated the construction of a 2-story-and-cellar building rather than a 2-story-and-basement building, and, therefore, was outside "the scope of the work" envisioned by lease agreement No. GS–02B–8978.

In connection with the plaintiff's argument, it is interesting to note that the lessor itself proposed, in its alternative scheme B, to construct a building of the

type which the plaintiff now characterizes as a 2-story-and-cellar building, and the lessor in scheme B referred to the bottom floor as the "basement." This was a tacit recognition by the lessor that the parties, when they entered into lease agreement No. GS–02B–8978, were using the word "basement" in its usual and ordinary meaning among members of the modern construction industry, i. e., a story of a building which is one-half the height of the story, or more, below the level of the ground. The term "cellar" is not commonly used in the modern construction industry.

It was obviously the purpose of lease No. GS–02B–8978, in providing that the building should be oriented upon the site at 599 Delaware Avenue "in conformity with Buffalo City ordinances," to make sure that the arrangement of the building would not violate any ordinances of the city; and there is no evidence in the record to indicate that the building, as finally constructed, failed to comply in any respect with the ordinances of the city. It is a reasonable inference that, from the standpoint of the city ordinances, it was immaterial whether the bottom or so-called basement story of the building at 599 Delaware Avenue was more than one-half, or less than one-half, or precisely one-half, the height of the story below the ground level. The archaic definitions of "basement" and "cellar" in the Buffalo building code seemingly had no bearing on the lawfulness of the building which the lessor constructed at 599 Delaware Avenue, and there is nothing in the record to indicate that the parties intended to contract in the light of such definitions.

It appears that when the defendant, as lessee, disapproved schemes AA, AAA, B, and BB, the defendant was exercising a discretionary power which was expressly vested in the defendant by lease No. GS–02B–8978, and that the defendant did not require of the lessor anything which was outside "the scope of the work" envisioned by the lease.

Since the evidence in the record fails to show any breach by the defendant of lease No. GS–02B–8978, it necessarily follows that the plaintiff is not entitled to recover, and that the petition should be dismissed.

COLLINS, Judge, took no part in the decision of this case.